### ROSE v. ROGERS. (No. 6767.)

(Court of Civil Appeals of Texas. Austin. June 19, 1924. Rehearing Denied Oct. 8, 1924.)

1. **Appeal and error ⬤⇒927(7)—Evidence viewed most favorably to party against whom verdict directed.**

On directed verdict against defendant, evidence must be viewed most favorably to her in determining its correctness.

2. **Divorce ⬤⇒254—Wife without claim for improvements to land vested in husband.**

If divorce decree, reciting division of community property by agreement and confirming such division, did not give title to certain land to wife, it divested her of title and vested title in the husband, free from any claims or equities, and the wife had no claim for improvements made thereon.

3. **Husband and wife ⬤⇒279(3) — Separation agreement abrogated by reconciliation.**

Separation agreement between husband and wife, adjusting their property rights, ceased to be of any force when the husband and wife became reconciled, and thereafter lived together as husband and wife.

4. **Divorce ⬤⇒254—Competent to show verbal agreement under decree confirming agreed division.**

Where divorce decree recited a division of community property by agreement, and that parties were in possession of the lands set apart to them, and confirmed such division, without specifying the terms thereof, it did not exclude the theory that the division confirmed was one made by oral agreement rather than written agreement, which had been abrogated by reconciliation, and it was competent for wife to show that certain property was set aside to her by the verbal agreement, for purpose of interpreting decree.

5. **Divorce ⬤⇒254—Evidence held admissible to explain divorce decree ratifying partition.**

In suit to recover land alleged to have been purchased from husband as part of his separate estate, where there was evidence that separation agreement, though abrogated by reconciliation, formed basis of divorce decree, the agreement was admissible to explain and interpret decree, which confirmed partition of community property without setting out its provisions.

6. **Divorce ⬤⇒254—Evidence of improvements by wife held admissible to show relations between her and husband, but not as evidence of title or equity.**

Where wife claimed that divorce decree, confirming partition agreement without identifying it, referred to a verbal agreement, which gave her land in dispute as her share of community property, her testimony as to improvements made thereon, though inadmissible to show title to or equity in it, was admissible to show relations between her and husband as to property and reasonableness of claimed agreement.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Action by A. B. Rogers against Mrs. Addie Rose. Judgment for plaintiff, and defendant appeals. Affirmed in part, reversed in part, and remanded for new trial.

Saunders & Whipple, of San Antonio, for appellant.

R. E. McKie, of San Marcos, for appellee.

McCLENDON, C. J. A. B. Rogers brought this suit against Mrs. Addie Rose to recover block 34 of the Westover addition to the city of San Marcos, and to enjoin defendant from interfering with his possession of, and from trespassing upon, this property. Upon the trial, it was agreed that the plaintiff had title to an undivided two-thirds interest in the property, and that only a one-third undivided interest therein was in controversy. The suit was tried to a jury, but the court directed a verdict in plaintiff's favor, and rendered judgment accordingly. From this judgment Mrs. Rose has appealed.

The case is briefed upon three proposi-

tions, and appellee has cross-assigned error.

Appellant's first proposition assails the action of the trial court in directing a verdict for plaintiff. Under this proposition it is contended that the evidence was sufficient to support a finding: First, that appellant was the owner of the property; or, second, that she was entitled, in any event, to recover the value of certain improvements she had in good faith made upon the property.

[1] The court having directed a verdict against appellant, the evidence must be viewed most favorably to her in determining the correctness of this action. Viewed in this light, the controlling facts in the case follow:

Appellant and George H. East were married in 1908. At the time appellant owned property in her separate right, worth, according to her testimony, about $35,000. East owned a farm near China, Tex. Whether it was incumbered is not clear; but at any rate, according to appellant's evidence, he was heavily involved in debt. On March 5, 1910, C. L. Hopkins conveyed to East an undivided one-third interest in a tract of land out of which the Westover addition was later platted. This deed recited a cash consideration of $11,666.65. It is conceded that East traded his farm for the land he got in this deed, and that it was therefore his separate property. On July 9, 1910, Hopkins, by his attorney in fact, conveyed to East a two-thirds undivided interest in block 34 of the Westover addition for $1,389, represented by a vendor's lien note for that amount. On August 13, 1910, Hopkins and East partitioned the Westover addition, and block 34, together with other property, was set aside to East, and block 34 was designated as the homestead of East and appellant. According to appellant's testimony, she made certain improvements on the block out of her separate estate, upon the representation by East that this would enable him to sell the other property in the addition he had owned. These improvements consisted of a small house, a large barn, a well and pumping plant to supply the addition with water, fencing, sidewalks, etc., which, according to appellant's testimony, cost her approximately $2,300. The only other improvement placed by her on the property was a pump in 1915, at a cost of $55. On January 6, 1912, there was a separation agreement between appellant and East, which purported to adjust all of their property rights. This agreement recited that East had expended about $900 of the separate funds of appellant, and that in full settlement of "said property matters" he agreed to convey her 90 acres of land in Caldwell county, and three lots in the Westover addition, to be selected by her or her agent from any lots he owned, all to be free from incumbrance.

In addition to these lands, the agreement reads:

"Said George H. East, pays to said Addie R. East the sum of $350 in cash, the receipt of which is here acknowledged by the said Addie R. East."

In consideration for these conveyances and the $350 the agreement recites that appellant acknowledged receipt in full from East of all her separate property which had ever come under his control, and released him from all claims of every character, and that she—

"here agrees and declares that all of said remaining property is the separate estate of George H. East, and was purchased and paid for wholly with the separate funds of the said George H. East; but she does not hereby waive any legal rights which she may have as the wife of George H. East in any portion of the separate property of the said George H. East."

The final clause in the agreement reads:

"This instrument is intended to evidence the agreement settling in full all the separate property rights existing between the parties hereto; and it is further understood that there is now in existence, at the time of this separation, no community estate of the said George H. and Addie R. East."

This agreement was signed by appellant and East and witnessed by their respective attorneys. It was not acknowledged; but on May 29, 1920, the attorney for East made affidavit to the execution and witnessing of the instrument, and it was then placed of record in Hays county. Shortly after this instrument was executed, appellant and East were reconciled, and lived together as man and wife from about February, 1912, until July or August, 1913, when they again separated, and appellant brought a suit for divorce against East, in Hays county, which resulted in judgment of divorce on September 25, 1913. The divorce decree adjudicates the property rights of the parties to the suit in the following language:

"And it appearing to the court that the defendant had heretofore made with plaintiff a division of all community property between said plaintiff and defendant, and that each of said parties are now in possession of the property so set apart to them respectively, and that in consideration of such division plaintiff has released the defendant from any and all claims of whatsoever character or kind she had heretofore held against said defendant for money belonging to her separate estate, which has been used and expended by the said defendant, and it further appearing to the court that plaintiff owns and possesses certain real estate in her own right and as her own separate estate, it is ordered, adjudged, and decreed by the court that the division of the community property between plaintiff and defendant be confirmed, and that plaintiff take nothing of the defendant on account of any claim heretofore asserted by her against defendant for money belonging to her

separate estate, which has been used and expended by said defendant; and that plaintiff hold all her separate estate; and that plaintiff and defendant each hold such community property as has been set apart to them, respectively, in such division, free from any and all claims and demands of the other party hereto; and that the defendant be perpetually restrained from interfering in any manner with plaintiff's exclusive management and peaceful enjoyment of her said separate property, and the said community property so set apart to her in said division."

On January 29, 1917, East conveyed the property in question to appellee for a recited consideration of $600 paid, "in cash or its equivalent."

It is contended by appellee that the divorce decree adjudicated the property rights of the parties in accordance with the separation agreement of January 6, 1912, which vested title to the property in litigation in East. This theory was supported by the testimony of East and his attorney. East testified he conveyed to appellant the land in Caldwell county and the lots in Westover addition selected by her; and it was shown that on April 10, 1912, he conveyed to her four lots in block 43, Westover addition, for a recited consideration of $900 paid out of her separate estate, in cash or its equivalent.

The theory of appellant is that the settlement agreement of January, 1912, was nullified by the reconciliation, and was in fact expressly abrogated, and she was later verbally given and put in possession of the property sued for as part of a partition and settlement agreement; and that she was in actual possession of it before and at the time of the divorce decree, through tenants, and retained possession continuously thereafter until about 1921, when she was dispossessed by appellee, during all of which time she collected the rents, personally used the barn, and paid the taxes.

The substance of her testimony relating to the partition, her possession, etc., follows:

·Two or three ·weeks after the 1912 separation agreement she returned to San Marcos from a hospital at Dallas, when she and East agreed that they would live together again, and that the separation contract "would be nothing at all." She then built a house south of block 34, in block 43, which ·was the property deeded to her in April, 1910, moved on said property, and has since then resided there. East acknowledged that he had done her wrong in the settlement contract, and said that:

"He wished he had something he could repay me all he had spent, and he did not have anything to give me what he had spent, and he would give me the right and title to the home. As far as I know, the written contract was torn up because we agreed it would be thrown away and mine was destroyed. * * * I suppose

there were only two copies of the contract; he had one and I had one. I destroyed .mine— wiped it out. Our agreement was to disregard and destroy it."

East stated she could have block 34, and—

"The understanding was that I was to have the whole thing—the improved part of it—the other, Mr. Pope had a lien on; and Mr. East agreed to·let me have that because he did not have anything to repay me for the taking care of it and his children. I was to have lots 548, 47, 46, and 508. All of this was in block 34 of the Westover addition. These are the lots with the improvements that I put on them. These are the lots that Mr. East gave me at the time of my separation from him."

East left her in July or August, 1913, and she took possession of the property in suit, rented the house, collected the rents, and used the barn herself.

Her testimony is clear to the effect that continuously from the time East left her until after the divorce proceedings she was in possession of the property through tenants, and collected the rents; that she so remained in possession until about 1921, when she was dispossessed by Rogers; that she paid the taxes during all this time, and .at one time redeemed the property at a tax sale. It was shown by the tax collector that during this time the property was assessed in her name, but the records did not show who paid the taxes. Rogers did not begin assessing the property until 1921, when he rendered only a one-third interest in it.

[2] It is clear that the divorce decree adjudicated all property rights between appellant and East, and that, if appellant has any title to the property in suit, it must be by virtue of that decree. All of the improvements upon the property made by appellant, with the exception of the pump purchased in 1915, were made in 1910, long prior to the divorce decree. She therefore has no claim for improvements under any theory of the case; because, if she did not acquire title to the property by virtue of the divorce decree, then that decree divested her of title therein, and vested title in East free from any claims or equities in her favor, a fact of which she was fully cognizant. In such case she could not recover for improvements thereafter made on the property.

[3] Whatever binding effect may have originally attached to the separation agreement of January 6, 1912, it ceased to be of force when appellant and East became reconciled, and thereafter lived together as husband and wife. James v. James, 81 Tex. 373, 16 S. W. 1087; Cox v. Mailander (Tex. Civ. App.) 178 S. W. 1012. This settlement, therefore, has no bearing upon the controversy, except in so far ·as it may have been afterwards acted upon by the parties, and constituted the basis of the divorce decree. If, as contended by appellee, it was the

agreement referred to in the decree, then it was thereby confirmed, and title vested in accordance with it. If, on the other hand, as contended by appellant, it was disregarded and a different arrangement, in whole or in part, made by the parties, and such subsequent arrangement constituted the basis of the divorce decree, then the latter and not the agreement of 1912 must control.

[4] It will be observed that the divorce decree does not expressly refer to the agreement of 1912; nor does it do so by necessary implication. It confirms a partition of the community property previously made, and provides a means by which the portion assigned to each spouse may be identified by reciting that they "are now in possession of the property so set apart to them respectively," and decrees "that plaintiff and defendant each hold such community property as has been set apart to them, respectively, in such division, free from any and all claims and demands of the other party hereto." The written agreement of 1912 is not referred to by date or any other description which would distinguish it from a subsequent verbal partition which might have been made and carried out by the parties, as testified to by appellant. The decree does not exclude the theory that the partition which it confirms was verbal and is consistent alike with the respective theories presented by appellant and appellee. It is competent, therefore, to show that the property in question was set aside to appellant, if in connection with such showing it was also proved that she was in actual possession of it, either in person or through tenants, at and prior to the divorce decree, provided the property which she thus claims was community property.

While it is conceded that East acquired one-third interest in the property as his separate estate, the evidence shows that the remaining two-thirds interest was purchased some two years or more after the marriage and entirely on credit. It was therefore presumably community property. The recitation in the agreement of 1912 that it was his separate property was not conclusive on appellant. If in fact it was his separate property, then appellant acquired no interest in it, because the divorce decree did not purport to divest either party of any separate property, but merely confirmed a prior partition of the community property, and released East of any claim appellant had against him.

Appellant's first proposition is sustained.

[5] Her second proposition complains of admission in evidence of the settlement agreement of 1912, on the ground that, if it ever had any binding effect, it was abrogated by subsequent reconciliation of the spouses, and their living together as man and wife. This proposition is overruled. The evidence of East and his attorney was to the effect that this agreement was subsequently acted upon and carried out by the parties, and formed the basis of the divorce decree. This evidence rendered the agreement admissible not for the purpose of establishing title by virtue of the agreement, but as explaining and interpreting that portion of the divorce decree which ratified and confirmed a partition of the community property which the parties had theretofore made.

Appellant's third proposition complains of the refusal of the trial court to permit cross-examination of appellee upon the question of the consideration actually paid him by East for the property. The only theory upon which the actual consideration which appellee paid for the property was material was that of bona fide purchaser for value without knowledge or notice of appellant's claim. We do not think the record presents this issue. The only title which appellant can assert to the property is that it belonged to the community, and was set aside to her in a verbal partition, which was confirmed by the divorce decree. The deed to East having been made during coverture, the prima facie presumption was that the title was in the community, in the absence of any recital to the contrary. The divorce decree charged all parties dealing with the community property with notice that it had been partitioned in accordance with an agreement of the spouses, each of whom was then in possession of his or her respective portion. Any purchaser from East, after the divorce, was therefore put upon inquiry whether the particular portion of community property so purchased was in possession of and claimed by appellant at the time the divorce decree was entered. This holding is aside from the question of appellant's possession at the time of appellee's purchase. Her possession at that time—a controverted issue—would charge appellee with notice of her claim.

Appellee has filed two cross-assignments of error. The first complains of the action of the trial court in permitting appellant to testify to the verbal agreement between herself and East to the effect that he gave her the property in controversy. This testimony was admissible for the reasons already given, under the theory of a verbal partition of the community property, carried out by placing her in possession, and confirmation thereof in the divorce decree.

It is contended in this connection that the evidence was not sufficient to show title in appellant under a verbal gift from East. This contention is correct, and it is unnecessary to discuss it. The testimony objected to does not, in and of itself, establish a verbal gift which would pass title to the property. The title, both of appellant and appellee, must rest solely in the divorce decree, which expressly adjudicated all property

rights of the spouses. It is only as interpreting that decree that the verbal gift testified to is pertinent.

[6] The second cross-assignment complains of the admission of appellant's testimony concerning the improvements she placed upon the property in question. This assignment is overruled. This evidence was not admissible for the purpose of showing that appellant had any title to or equity in the property. But it was admissible as showing the relations of appellant and East to the property in question—their financial dealings with each other and the property—and the reasonableness of the agreement to which appellant testified and under which she claims.

For the error of the trial court in directing a verdict against appellant, in so far as the controverted one-third interest in the property is concerned, the judgment of the trial court is reversed and the cause remanded to that court for a new trial. To the extent that it rendered judgment in favor of appellee for the two-thirds undivided interest in the property admitted to belong to appellee that judgment is affirmed. Costs of appeal will be taxed against appellee.

Affirmed in part, and in part reversed and remanded.