Sidney P. CHANDLER, Appellant,

v.

Billie Louise CHANDLER et al., Appellees.

No. 13437.

Court of Civil Appeals of Texas.

San Antonio.

March 25, 1959.

Rehearing Denied April 22, 1959.

Sidney Chandler, Corpus Christi, Perkins, Floyd & Davis, Alice, for appellant.

Trimble & Dobbs, Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellees.

POPE, Justice.

Sidney P. Chandler, plaintiff below, has appealed from an order which denied his summary judgment and granted a summary judgment to Billie Louise Chandler. Sidney P. Chandler sued Billie Louise Chandler, his former wife, for an accounting and a division of community property acquired by them prior to their divorce, which was granted October 7, 1953. Plaintiff's suit proceeds on the basis that there has never been a division of the community property. The trial court's judgment held that there was a final division of all community property by the 1953 divorce decree. In our opinion the judgment is correct, and plaintiff's suit is a collateral attack upon the 1953 divorce decree.

On January 23, 1951, while married, the parties entered into a formal written agreement which purported to partition their property. Plaintiff urges the invalidity of a property division between spouses. He reasons that spouses may not, by agreement, partition and transfer their community property and change the class of the estate which the law fixes. That is a correct principle of law. Hornsby v. Hornsby, 127 Tex. 474, 93 S.W.2d 379; Reed v. Reed, Tex.Civ.App., 283 S.W.2d 311; Bruce v. Permian Royalty Co. No. 2, Tex.Civ.App., 186 S.W.2d 686.

Defendant's motion for summary judgment, however, does not rely upon the 1951 agreement by the married couple but upon the 1953 divorce decree. In June, 1953, Billie Louise Chandler instituted a divorce action, and the records of that suit are attached to her motion for summary judgment in this suit. In her amended original petition in the divorce action she alleged the execution of the written partition agreement and stated that she desired to keep her property, and desired that defendant, Sidney P. Chandler, keep the property allotted to him in the agreement. Sidney P. Chandler answered, filed a cross-action in the divorce suit, and alleged the same separation and property division agreement. With reference to the debts, he pleaded: "In such agreement each party agreed to pay the indebtedness existing against the part received by her or him * * *." He then pleaded that he had paid $1,000 on a paving lien which she owed under the agreement, and asked for a return of that amount. By supplemen-

pleading in the divorce suit, Billie Louise Chandler then alleged that her share of the community debts was fixed at $31,000 by the 1951 property agreement, but that in truth there were other debts, including the $1,000 item for the paving lien and $3,094.80 for taxes, against the property set over to her. Sidney P. Chandler took a non-suit on his cross-action and withdrew his contest. With respect to the $1,000 claim, it was dismissed "without prejudice." Billie Louise Chandler then obtained a divorce.

The divorce decree carefully defined the property rights between the parties; it recited that there was a written agreement executed on January 23, 1951, and that it was recorded in the Deed Records of Nueces County. The decree stated: "The Court being of the opinion that such agreed division is just, right and equitable, it is therefore ordered, adjudged and decreed that the agreed division and partition between the parties hereto of the community property owned by themselves be, and the same is hereby, approved." The court then decreed that Billie Louise Chandler should have as her separate property three tracts of land, which were described with particularity, and did the same with respect to three tracts of land set over to Sidney P. Chandler, and it divided the personal property. The division agreement, thus approved and made a part of the decree, also expressly provided that each party had agreed to pay the debts against his respective properties or lands.

This present suit seeks to have the property divided as though there had never been a division. Plaintiff, Sidney P. Chandler, asserts that he has actually paid about $50,000 of the community debts. However, while he asks for an original division of the communty property, he has sold all the property that was set over to him by the decree. Plaintiff apparently reasons that because the 1951 agreement was void as being a division of community property between spouses, therefore, the

later decree is void also. That is a wrong legal conclusion. The 1953 decree, in our opinion, was entered by a court which had jurisdiction. There was no appeal, and that judgment may not be collaterally attacked. Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 11 A.L.R. 1152; Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97. See Thompson v. Thompson, Tex.Civ.App., 238 S.W.2d 218. The 1953 divorce decree approved the earlier property settlement and it was then validated and made operative as a part of the decree itself. The divorce decree, as held by the trial court, is a bar to plaintiff's collateral attack upon the property division. Beck v. Beck, Tex.Civ.App., 291 S.W.2d 358; Gareis v. Gordon, Tex.Civ.App., 243 S.W.2d 259; Adams v. Adams, Tex.Civ. App., 214 S.W.2d 856; Peterman v. Peterman, Tex.Civ.App., 55 S.W.2d 1108; Rose v. Rogers, Tex.Civ.App., 264 S.W. 954; Shook v. Shook, Tex.Civ.App., 145 S.W. 699; 15-A Tex.Jur., Divorce, § 172.

■ Plaintiff, Sidney P. Chandler, by another point argues that he and Billie Louise Chandler orally severed the minerals prior to the 1953 decree, and that he is the owner of one-half the mineral rights. The basis for this contention is a letter that Billie Louise Chandler wrote plaintiff eleven days before the execution of the formal property agreement on January 23, 1951. In that letter she expressed her idea of the proper division of the property, and added, "oil on any property divide in ½." However, as a part of that same letter and on the same page, she asked: "Now this is done from, Sidney, your own figures—do they suit you, are they right? You also say we have many new calves, could I have six or eight heifers?—and 1 bull?" When we look at the entire letter, we find that it is nothing more than preliminary negotiations. It does not purport to be an agreement. Billie Louise Chandler asked Sidney P. Chandler if the ideas suited him. She asked if she could have some of the live stock. Eleven days later

the prior negotiations were merged into a carefully worded document.

Any understanding between the parties about an oral oil division is excluded by the written document and the subsequent decree. There are no ambiguities. The document legally described the property which Billie Louise Chandler should have, as did the later decree which approved the division. The agreement provided that Sidney P. Chandler would not "at any time hereafter claim or demand any of her property, real or personal * * *." It provided that "She shall and may enjoy and absolutely dispose of the same, as if she were a feme sole and unmarried," and "The said Billie Louise Chandler shall from henceforth have, hold, possess and enjoy, in severalty, by herself and as her separate property and estate, and to her and her heirs and assigns, for her part, share and proportion of the said lands, premises and property, all of the property described as follows:" The property was then described. There was another clause whereby Sidney P. Chandler purported to grant and convey the property to her as her separate property. The rights of the parties are measured by the unambiguous decree and cannot be enlarged or diminished by prior or contemporaneous collateral agreements in the absence of fraud, accident, or mistake. McKivett v. McKivett, 123 Tex. 298, 70 S.W.2d 694; Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; Ross v. Burleson, Tex.Civ.App., 274 S.W.2d 105.

■ Plaintiff further contends that he and Billie Louise Chandler in December, 1953, shortly after their divorce, orally agreed that plaintiff would own the minerals to certain lands in Nueces County, and that Billie Louise Chandler and the four children would own equal one-fifth interests in the minerals to certain San Patricio County lands. Billie Louise Chandler has conveyed certain royalty interests to two children and has conveyed to Guaranty Title and Trust Company in trust, certain royalty for a third child, but has conveyed nothing to Suzanne, the fourth child. The Guaranty Title and Trust Company is named as a defendant by reason of its trust relationship for one child. In answer to this alternative pleading and contention, defendant, Billie Louise Chandler, pleaded that any such oral agreement is void under the Statute of Frauds.

As previously discussed, the 1953 divorce decree settled the mineral as well as the surface rights of the parties. The only way Billie Louise Chandler's mineral rights could thereafter be divested would be by her conveyance.

Plaintiff's reasoning is that he and Billie Louise Chandler orally and expressly agreed that the minerals would be jointly owned, and that they in turn would make certain conveyances to their children. Plaintiff's power to sue on behalf of his four adult children is obscure but becomes unimportant because the point is without merit anyway. Plaintiff relies upon an oral agreement for the exchange of lands in violation of the Statute of Frauds, Article 3995, Vernon's Ann.Civ.Stats.; Cowden v. Bell, Tex., 300 S.W.2d 286; Garcia v. Garcia De Ortiz, Tex.Civ.App., 257 S.W. 2d 804; Robinson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505.

■■ Plaintiff further contends that the 1953 divorce decree awarded him the custody of Suzanne, their seventeen-year-old daughter. The decree is silent concerning the support of this child. Plaintiff says that Billie Louise Chandler agreed to support her, but that he has provided all her support. For her breach of the agreement, he concludes that the divorce decree is void. If the validity of decrees were thus dependent upon subsequent events, final judgments would be whimsical legal instruments. The fact that the decree did not provide for the child's support does not invalidate the decree. On the contrary, such silence imposed the duty of support

upon the father, who has the primary duty. Gulley v. Gulley, 111 Tex. 233, 231 S.W. 97, 15 A.L.R. 564; 15-B, Tex.Jur., Divorce and Separation, § 265.

The judgment is affirmed.