BERNARD W. COX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cox v. Commissioner
Docket No. 13876-78.
United States Tax Court
T.C. Memo 1982-667; 1982 Tax Ct. Memo LEXIS 80; 45 T.C.M. (CCH) 138; T.C.M. (RIA) 82667; November 18, 1982. Bernard W. Cox, pro se. Sara W. Dalton, for the respondent. *82 GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year 1975 in the amount of $1,589.46. The issues for decision, after concessions by the parties, are as follows: (1) Whether petitioner is entitled to deduct rental expenses in excess of the amount conceded by the respondent; (2) whether petitioner is entitled to a business casualty loss deduction in excess of that allowed by the Commissioner; (3) whether petitioner is entitled to a depreciation expense deduction related to his rental property in excess of $1,596.63 as allowed by the Commissioner; (4) whether there is an additional deficiency in tax resulting from a lower basis for depreciation of rental property raised by respondent for the first time on brief; (5) whether petitioner had an actual and honest profit objective with respect to his trade or business in the taxable year 1975 which entitled him to claim a loss from the trade or business; and (6) whether petitioner is entitled to damages, expenses and attorney's fees in connection with this litigation. For convenience and in order to avoid needless *83 repetition of the facts, the findings of fact and opinion as to each issue are combined under the appropriate heading. Some facts have been stipulated and are so found. The petitioner is an individual who filed his Federal income tax return for the taxable year 1975 as an unmarried head of household. At the time of the filing of his petition in this case petitioner was a resident of Houston, Texas. The Commissioner issued the petitioner a notice of deficiency dated October 20, 1978, which specified the following adjustments to income: 1975
Rental Income
[1] $220.00 Rental Expenses
824.39 Business Casualty
275.00 Rental Depreciation
2,183.37 Schedule C Loss
3,844.79 Exemption
(3,000.00)
Standard Deduction
(2,300.00)
The parties agree that the Commissioner's rental income adjustment is correct. Issue 1. Rental Expenses
The Commissioner, in his notice of deficiency, disallowed $824.39 of petitioner's claimed rental expense deductions. Respondent has since conceded that petitioner is entitled to an additional rental expense deduction in the amount of $150. Petitioner, *84 who bears the burden of proof, Welch v. Helvering,290 U.S. 111 (1933), presented no evidence with respect to any additional rental expense incurred by him in 1975. We find the Commissioner's determination, as adjusted by respondent's concession, to be correct. Issue 2. Business Casualty
Petitioner claimed a business casualty loss in the amount of $1,175. Of that amount, the Commissioner allowed all but $275 which the petitioner claimed to relate to the loss of 19 shrubs on the rental property. The appropriate deduction for a casualty loss is the lesser of (1) the decrease in fair market value of the property as a result of the casualty or (2) the adjusted basis of the property; however, when business property is totally destroyed by casualty, the amount deductible is the adjusted basis of the property even though it is more than the decrease in fair market value. Sec. 1.165-7(b)(1), Income Tax Regs. Because this was a business property, the basis or value of the shrubs will be the focus of consideration and they will not be considered as an integral part of the real property as a whole. Sec. 1.165-7(b)(2)(i), Income Tax Regs.; cf. sec. 1.165-7(b)(2)(ii), *85 Income Tax Regs.
The respondent maintains that the petitioner has not established either that the casualty occurred or the amount of petitioner's loss if any. Petitioner presented no evidence to show either his basis in the shrubs or the decrease in their value. Instead he asks how he could prove that the plants died. He also suggests that the shrubs received a new value at the time of the sale of the house to petitioner by his former wife Erma. [2] He fails, however, to show how much of this increased value should be apportioned to the shrubs. The petitioner has failed to sustain his burden of proof. We hold for respondent on this issue. Issue 3. Rental Depreciation
The petitioner claimed a depreciation deduction with respect to his rental property in the amount of $3,780. The Commissioner, in his notice of deficiency, determined that petitioner was entitled to a rental depreciation deduction of only $1,596.63. The difference between these amounts arises from disagreement over both the petitioner's depreciable basis in the property and the correct rate of depreciation to be *86 applied. The petitioner, on his Federal income tax return, claimed depreciation under the declining balance method at a rate of 200 percent of that allowable under the straight line method. On brief petitioner concedes that he is entitled to use a rate of only 150 percent. Respondent maintains that petitioner is only entitled to use a rate of depreciation not to exceed 125 percent. The depreciation deduction that the petitioner may claim is determined under section 167 of the Internal Revenue Code of 1954. [3] Although section 167, as in effect for the year in question, did allow depreciation under "the declining balance method, using a rate not exceeding twice the rate which would have been used and the annual allowance been computed under the [straight line] method….," section 167(b)(2), this method of depreciation was limited with respect to certain properties. Under section 167(j) specific limitations were placed on the rate of depreciation allowable with respect to "section 1250 property," which includes the residential real property before us. While section 1250 property is generally limited to using no more than the 150 percent declining balance *87 method, section 167(j)(1)(B), certain residential rental property is further limited to use no more than the 125 percent. Sec. 167(j)(5)(B). The relevant part of section 167(j)(5), as in effect in 1975, provided as follows: (5) USED RESIDENTIAL PROPERTY.--In the case of section 1250 property which is residential rental property (as defined in paragraph (2)(B)) acquired after July 24, 1969, having a useful life of 20 years or more, the original use of which does not commence with the taxpayer, the allowance for depreciation under this section shall be limited to an amount computed under-- (A) the straight line method, (B) the declining balance method, using a rate not exceeding 125 percent of the rate which would have been used had the annual allowance been computed under the method described in subparagraph (A) * * *. The petitioner's property is residential real property with a useful life of 20 years or more. This property was first acquired by the petitioner and his wife in December of 1969. On September 7, 1972, petitioner and his wife executed a property settlement agreement in contemplation *88 of divorce in which petitioner received the house. Petitioner first rented the house as a residential rental property subsequent to the time of the property settlement. The property was not depreciable property when its original use as petitioner's residence commenced; it became depreciable property after July 24, 1969; therefore, it is not property the original use of which commences with the taxpayer, section 167(j)(6)(B), and is subject to the 125 percent limitation. The parties also disagree as to petitioner's basis in the property. Petitioner was formerly married to Erma Jane Cox (Erma). In December, 1969, petitioner and Erma purchased a residence in Houston, Texas (the Property). After their purchase of the Property the petitioner and his wife made certain capital improvements to the Property. These improvements consisted of an antenna costing $40, flood lights costing $70, an outbuilding costing $450, roof vents costing $70, and draperies costing $40. On September 7, 1972, petitioner and Erma executed a property settlement agreement in contemplation of divorce. Petitioner and Erma were divorced on December 20, 1972. The property settlement was approved by the court *89 and entered and incorporated by the court as part of the decree of divorce. Pertinent parts of the agreement provide as follows: WHEREAS, certain unreconcilable differences have arisen between the parties, and in consequence thereof they have separated and are now living separate and apart, in connection with which separation it is the intention and desire of the parties that there be a complete, final and effective division and settlement of their property, provision made for the support of the children born issue of the marriage of the parties hereto, and the relinquishing of all rights, interest and claims which either party might otherwise have upon the other, each party having received the advice of counsel, NOW, THEREFORE, in consideration of the premises and of the numerous promises and covenants herein contained, both parties with full knowledge of the extent, value and character of the properties owned by them separately and jointly, and of their respective incomes, obligations and needs, do fully and voluntarily agree as follows: I. ERMA JANE COX is to have the following described property, to-wit: (a) One 1967 Pontiac
(b) Household furniture, including bedroom *90 suite, color TV, sofa and chair, dinette and chairs, silverware, crystal, and various personal items. II. BERNARD WAYNE COX is to have the following described property, to-wit: (a) Household furniture, including stereo, dining table and chairs, sofa and chairs, tools, king-size bedroom suite, washer and dryer, typewriter, and various personal items. (b) The 1970 Mazda III. BERNARD WAYNE COX is to have as his separate property the house located at 11439 Newton, Houston, Texas 77034, and is to pay ERMA JANE COX the sum of One Thousand Five Hundred Dollars ($1,500.00) for her equity in said house, payable $75.00 per month beginning six months after the divorce is final, with interest payable at the rate of seven per cent (7%). BERNARD WAYNE COX is to be responsible for all community debts wheresoever incurred, whatsoever nature, and is further to be responsible for the medical and dental bills of the children. Both parties were advised by counsel prior to executing the property settlement agreement. The petitioner's payment of $1,500 for Erma's equity in the Property was made by the petitioner in the form of a note at 7 percent interest, secured by a lien on the *91 Property. At the time of the divorce Erma had incurred and was continuing to incur medical expenses resulting from a nervous breakdown suffered in 1972. As petitioner and Erma resided in Texas throughout their marriage, their property, including their residence, was community property. Petitioner's claimed depreciable basis in the Property is based both on capital improvements which he claims to have made to the Property and on his assertion that his receipt of his wife's one-half community interest in the Property was a sale or exchange that established a new basis for him in the Property. We have outlined the capital improvements which we find that the petitioner, with his wife, made. These amounts were allowed by the Commissioner in his notice of deficiency. The petitioner has failed to establish any other capital expenditures that would increase his basis in the property. As to petitioner's purchase basis theory, respondent concedes that petitioner is entitled to an increase in his basis over the original cost of the property to the extent of the $1,500 set forth in the written property settlement agreement. Petitioner, however, argues that he and Erma had an oral *92 agreement outside of the written property settlement agreement to the effect that petitioner would pay all of Erma's medical bills from the time the property settlement agreement was executed until their divorce became final. Petitioner claims that his payment of these medical expenses constituted additional payments for Erma's equity. The property rights of parties upon divorce are determined by state law. Under Texas law an oral agreement between a former husband and wife as to their property settlement will not be recognized where the divorce decree provides for the property settlement. Chandler v. Chandler,323 S.W. 2d 377 (Civ. App. 1959), error dismissed for want of jurisdiction. Accordingly, petitioner's asserted oral property settlement agreement cannot be considered. The petitioner further argues that he is entitled to an increase in basis for "sweat equity" for working in the house and putting in a yard. The Federal income tax laws, however, do not recognize such "sweat equity." Under section 1012 and other relevant sections basis is generally based on cost. While petitioner may be entitled to an increase in basis for capital expenditures where *93 there is an expenditure that establishes a cost, he is not entitled to capitalize his own labor. Issue 4. Additional Deficiency with Respect to Depreciation
The Commissioner, in his notice of deficiency, determined that petitioner had a cost basis in the Property in the amount of $31,900, less $3,000 for the land, for a depreciable basis before improvements of $28,900. Respondent asserts, for the first time on brief, that petitioner's correct basis before improvements was as follows: Cost 1969
$28,450
Closing costs
417
Paid at divorce
1,500
30,367
Less land
3,000
27,367
The cost of $28,450 used by respondent as the starting point in his brief is based upon the closing statement for the purchase of the house. The source of the starting point of $31,900 shown in the statutory notice of deficiency is unknown. Respondent argues that the $31,900 includes the $1,500 which petitioner paid his former wife to acquire the entire interest in the house. Although we would feel more comfortable if the statutory notice of deficiency indicated that the $1,500 had been allowed, the $1,500 forms part of petitioner's cost basis in the property when he acquired *94 his entire interest from his former wife. Petitioner has the burden of proving that his cost basis exceeded that allowed by the Commissioner in his statutory notice of deficiency. Petitioner has not proved any cost in excess of $31,900 and is not entitled to an increase in basis over the $31,900 starting point. Respondent's computation on brief reduces the starting point for computing basis from $31,900 to $28,450 which would result in an increased deficiency. This was raised for the first time on brief and is new matter under Rule 142, Tax Court Rules of Practice and Procedure. Respondent did not ask for an increased deficiency in his answer. If the introduction of the closing statement into evidence indicated to respondent that his starting point for the computation of basis was too high, he should have moved to conform the pleadings to the proof, which he did not do. If we were to allow respondent to claim the increased deficiency for the first time on brief, it would deprive petitioner of the opportunity to present evidence to controvert whatever evidence respondent relies upon to sustain his burden of proving the new matter. Respondent is, therefore, limited to the determination *95 of basis contained in the statutory notice of deficiency. Rubin v. Commissioner,56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972); Fox Chevrolet, Inc. v. Commissioner,76 T.C. 708 (1981); Commissioner v. Transport Mfg. & Equipment Co.,478 F.2d 731 (8th Cir. 1973), affg. Riss v. Commissioner,56 T.C. 388 (1971) and 57 T.C. 469 (1971). [4]
Issue 5. Trade or Business Profit Objective
In 1974 the petitioner, having taken several business-related courses while pursuing a Masters of Business Administration at the University of Houston, sought to develop a new trade or business while remaining a full-time employee of the National Aeronautics and Space Administration. He called his new business "Cox Recreational Sales." The petitioner originally focused his attention on selling guns. He began to study the gun industry, having very little background in the gun business. He went to *96 gun shows and acquired a gun dealer's license. Prior to 1975 the petitioner owned several guns, at least one of which he received as a child. In 1975 the petitioner purchased five guns for resale. He considered all of his guns to be part of his inventory which he would sell. Petitioner had a sales tax permit. He had rubber stamps and address labels showing his business name. Petitioner sold two guns in 1975. Petitioner kept financial records for his business and kept meticulous records of his gun purchases and sales. Although petitioner began his gun business research by attending gun shows, he soon found them to be a poor vehicle for his business. The guns offered for sale at such shows were, with few exceptions, offered at retail price, making the shows a poor place for him to buy. As a licensed gun dealer, it was illegal for him to sell guns at such gun shows. Petitioner instead purchased guns for sale from a wholesaler and advertised primarily in small local papers. He also advertised his gund by word of mouth to people he knew. He used his den as a place of business.
Outside of his sales activities, the petitioner did not have a strong interest in guns. He was *97 not an avid sportsman or hunter. Respondent maintains that petitioner's trade or business was not engaged in for profit, so that the deductions that the petitioner may claim with respect to this trade or business are limited by section 183. Section 183(a) provides the general rule that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) allows certain deductions related to the activity regardless of whether the activity is engaged in for profit, such as interest and taxes. Other deductions, however, are deductible in excess of the gross income derived from that activity only if the business activity is engaged in for profit. An activity not engaged in for profit is defined in section 183(c) as: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph *98 (1) or (2) of section 212. The standard for determing whether an individual is carrying on a trade or business so that his expenses are deductible under section 162 is whether the taxpayer engaged in the activity "with the actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), on appeal (D.C. Cir., June 1, 1982). Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer had the requisite intent. Dreicer v. Commissioner,supra at 645. The regulations contain relevant factors for consideration in determining whether an activity is engaged in for profit. They are, in large part, a synthesis of prior case law. [5]Section 1.183-2(b), Income Tax Regs., includes the following factors: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) *99 the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. We have carefully viewed the record with the above factors in mind. Not all of the above factors are relevant to the particular facts of this case. Other of these factors, while relevant, do not weigh significantly either for or against a characterization of petitioner's trade or business as being engaged in with an actual and honest profit objective. We find, considering the nascent stage of petitioner's business, that petitioner carried on his activities in a businesslike manner, keeping necessary financial records and complying with the relevant laws concerning gun dealers. We also find that, although he began with little knowledge of the gun business, he made a serious effort to educate himself both with respect to the gun business and to business in general. The time he spent on his business was necessarily limited as he was still a fulltime employee, *100 but we are viewing the very beginnings of his enterprise and it would have been foolish for him to dive into the business full time until he knew he could support himself from the activity. Even were he to continue to operate it as a part-time business, this fact would not negate his profit objective. In recent years many people have sought a second line of business to supplement their income. Also, the record does not demonstrate that the petitioner was fond of guns and that this activity was a means of making his personal pleasure or recreational activities deductible. On the basis of the record as a whole and weighing the relevant factors, we find that the petitioner did have an actual and honest objective of making a profit with respect to his gun business in 1975. Issue 6. Damages, Expenses and Attorney's Fees
The petitioner claims to be entitled to damages, expenses and attorney's fees with regard to this litigation. There is no statutory authority for awarding damages to the petitioner in an action brought in this Court and petitioner's claim for damages is denied. This Court was granted authority to award attorney fees in cases instituted after February 28, 1983, [6] *101 but it has no such authority in cases instituted prior to that date; nor does it have the authority to award costs. McQuiston v. Commissioner,78 T.C. 807 (1982). Decision will be entered under Rule 155.
Footnotes
1. Positive figures indicate an increase to taxable income.↩
2. See discussion of this event under Issue 3. Rental Depreciation,infra.↩
3. All section references are to the Internal Revenue Code of 1954, as amended.↩
4. Platzer v. Commissioner,T.C. Memo. 1981-725; O'Heron v. Commissioner,T.C. Memo. 1981-724; McKean v. Commissioner,T.C. Memo. 1981-670↩.
5. See Benz v. Commissioner,63 T.C. 375, 382-383↩ (1974).
6. Sec. 7430.↩