Edwin THURMON et al., Appellants,

v.

ATLANTIC REFINING COMPANY, Appellee.

No. 15652.

Court of Civil Appeals of Texas.

Dallas.

May 6, 1960.

Rehearing Denied June 3, 1960.

agreement for "farm out" of described lease holds in Pecos County, Texas; that is, to execute written leases for oil and gas, defendant interposed the Statute of Frauds. The motion was heard along with affidavits of the parties and depositions on file; and the Court, being of opinion that no genuine issue of any material fact was there raised, accordingly rendered judgment that plaintiffs take nothing by their suit, plaintiffs appealing in consequence.

Inception of the action of plaintiffs was in July 1954; and both before and after said date defendant company was owner of the oil and gas lease hold estates in sections 59, 60, 61 and 62 in Block 8, H & G N R R Company Survey, Pecos County; its leases covering various interests in the minerals being then in force by reason of the production of oil in paying quantities from wells located on the property. Appellee's motion for summary judgment, sworn to by Alan D. Knox of Midland, Texas was countered by the affidavit of plaintiff Thurmon; and as its factual content must be taken as true for purposes of this appeal, same will now be quoted in essential part, affiant first asserting personal knowledge of every statement of fact made therein:

"2. Defendant is in error in stating that the facts stated by defendant in Paragraph 2 of defendant's Motion for Summary Judgment are all uncontroverted, and in this connection affiant states:

"a. In connection with sub-paragraph 2, of Paragraph 2, of Defendant's Motion for Summary Judgment, it was stated and represented to me by Herbert Wales, the South Division Land manager of Atlantic Refining Company, that in order to establish the title of Atlantic Refining Company to the lease with regard to which I was seeking a farm-out it would be necessary to show the continued production of a well on the south part of Section 59, Block 8, H&GN R R Co. Survey,

Walker F. Means, Pecos, John A. Menefee, Rankin, for appellants.

A. C. Grosse, Dallas, H. E. McRae, W. B. Browder, Jr., and Stubbeman, McRae, Sealy & Laughlin, Midland, for appellee.

YOUNG, Justice.

Rule 166–A, Texas Rules of Civil Procedure, Summary Judgment Proceedings. To the suit of appellants for damages resulting from breach of an alleged oral

Pecos County, Texas, being operated by A. H. Higle, or, if that could not be done, to obtain the signature of a division order by Mr. Higle and bring about the payment of the money for the production of oil for the period in question to the various owners so that they would be bound by the acceptance of the same. Mr. Wales has testified in his deposition, at page 38 thereof, that, 'The obtaining of the information about Mr. Higle's well would determine what interest Atlantic owned under the tracts we were discussing.' There is testimony of Mr. Wales to the same general effect at other points in his said deposition.

"b. In connection with sub-paragraph 3, of said Paragraph 2, of Defendant's Motion for Summary Judgment, Herbert Wales himself, at the time of my first meeting with him at the Atlantic offices in Midland, in July 1954, told me that he was South Division Land Manager for Atlantic Refining Company, and the Secretary at the desk in the Atlantic Refining Company also told me that Mr. Wales was South Division Land Manager for Atlantic Refining Company and that I would have to see him if I wanted to farm-out land in Pecos County, I asked her if there was anyone else I could see. She told me that I would have to see Mr. Wales because he was South Division Land Manager and had charge of the area. On several occasions Mr. Herbert Wales told me that anyone who desired to obtain a farm-out of oil and gas leases in the South Division, including Pecos County, would have to come through him. At the time of my second conversation with Mr. Wales, when Mr. Engel was with me, at the offices of Atlantic Refining Company, in Midland, Texas, on the 29th day of July, 1954, Mr. Wales produced a letter and said that he had good news for us; that the Atlantic Refining Company would accept a one-sixteenth override, instead of a one-eighth, as previously authorized, if we would accept a ten acre cure-out instead of a twenty-acre cure-out. He showed us a letter, but he did not offer to let us read it, and I did not see by whom it was signed. He said at that time that I had a contract, and that it would not be necessary for me to return to Midland; that he would mail the contract to my attorney, at Pecos, Texas. He told me that he would have us drilling by September 1st, 1954; that he had some title curative work to do, but that he would have us drilling by that time. In my first discussion with Mr. Wales, he had stated to me that he was authorized to make a farm-out for a one-eighth over-ride, but that he would have to submit my proposition for a one-sixteenth over-ride to Dallas, and his statement which I have just mentioned on the occasion of my talk with him on July 29, 1954, was his notification to me of the answer from Dallas with regard to the one-sixteenth override. At all times Mr. Wales represented to me that he had full authority to negotiate with me a farm-out contract, and I relied upon his representation.

"c. In connection with sub-paragraph 10 of said Paragraph 2 of Defendant's Motion for Summary Judgment, wherein it is stated by Defendant that no payment of consideration was ever made to Atlantic by Thurmon or the other two plaintiffs for the claimed oral agreement to assign a part of the oil and gas lease, reference is here made to the depositions of Edwin Thurmon and A. H. Higle.

"Reference is also made in this connection to the deposition of Carl Engel and Francis K. Campbell.

"The depositions of Edwin Thurmon and A. H. Higle show that Edwin Thurmon, at the request of Herbert Wales, South Division Land Manager

of Atlantic Refining Company, and in behalf of his contract, obtained evidence of the production of the well operated by A. H. Higle and also helped to bring about the signature of A. H. Higle to the division order desired by Atlantic Refining Company.

"In this connection, I, Edwin Thurmon, spent more than one hundred hours and made at least one half dozen telephone calls at my own expense, and incurred automobile expense, in obtaining evidence of the production of the Higle well, for Atlantic Refining Company. These endeavors on my part were in partial performance of my contract with Atlantic Refining Company, and in addition thereto I obtained necessary financial backing for carrying out my obligations under the contract and made arrangements with Mr. Engel for the drilling of the well and with Mr. Campbell for equipping the well. Mr. Engel and Mr. Campbell in turn held themselves in readiness. Mr. Engel was at all times ready, willing and able to proceed with the drilling of the well, and Mr. Campbell was at all times ready, willing and able to furnish the necessary equipment for the well.

"In addition to the Jumbo J. Fort Worth Spudder mentioned by Mr. Engel in his deposition, he had a half interest in a Super D. Fort Worth Spudder which he owned jointly with a partner and which was available for drilling the well and also had the right to use at any time a Super D. Fort Worth Spudder owned by his father, who had retired from active oil field contracting.

"d. In connection with sub-paragraph 11 of said Paragraph 2 of the Defendant's Motion for Summary Judgment, possession of the premises was actually taken and asserted by the plaintiffs by staking their locations upon the premises at the request of Mr. Herbert Wales. During my second conversation with him, in the presence of Mr. Engel, on July 29, 1954, he had us show him on a map where our location would be, and he marked on the map, and he asked us to stake our locations on the ground. Possession of the premises was thus given by Atlantic Refining Company to the plaintiffs and was thus taken by the plaintiffs. Reference is here made to the testimony of Mr. A. H. Higle, in his deposition, that I took him over the leases.

"e. Defendant's conclusion as to the effect of the testimony, are, of course, only conclusions, and the depositions of the various witnesses must be looked to in order to determine what was actually said by them."

Points of appeal will now be quoted:

"1. The claim of appellants as alleged in their First Amended Original Petition, and as supported by affidavit and depositions, is not rendered unenforceable by the Statute of Frauds, because: (a) The consideration passing from the appellants, Edwin Thurmon and his two associates, Francis K. Campbell and Carl Engel to the appellee, Atlantic Refining Company, was performed by them to the full extent permitted by the appellee. (b) Possession of the premises in question was delivered by the Atlantic Refining Company to the appellants, and was taken by the appellants. (c) The pleadings, supporting affidavit and depositions clearly show the existence of such facts as would make the transaction a fraud upon the appellants if not enforced."

Appellees in counter-point maintain the correctness of the Court's rendition because:

" * * * the oral agreement claimed by appellants was within the bar of the Statute of Frauds and the Statute of Conveyances, because such agreement concerned realty, it was oral, and there

had been neither payment of consideration, exclusive possession by the vendee, nor the making of a valuable or permanent improvements."

In this connection Art. 1288, Vernon's Ann. Civ.St., provides that no estate of inheritance or free-hold in lands shall be conveyed unless the conveyance be in writing. Art. 3995, Vernon's Ann.Civ.St., also provides in part:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto authorized: * * *

"4. Upon any contract for the sale of real estate or the lease thereof for . a longer term than one year;"

▮ Relevant to the law question thus raised by the parties is the following statement of principle from Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, at page 1116, 15 A.L.R. 216:

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18.

Each of these three elements is indispensable, and they must all exist.

"Regardless of the disposition of other courts to engraft other exceptions upon a plain and salutary statute which had its origin in the prolific frauds and perjuries with which parol contracts concerning lands abounded, this court has always refused to further relax the statute. We think the wisdom of its course has been justified."

Above doctrine has been uniformly approved in more recent Supreme Court holdings. See Chevalier v. Lane's Inc., 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045; Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286; Pappas v. Gounaris, Tex., 311 S.W. 2d 644.

Of the elements indispensable to relief against operation of the Statute of Frauds, according to above rule is mentioned "2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with consent of the vendor." Here there was admittedly no improvements; in lieu thereof appellants claim "the presence of such facts as would make the transaction a fraud upon the purchaser (plaintiffs) if it were not enforced."

Along with Thurmon's affidavit are the depositions of all plaintiffs (Thurmon, Campbell and Engel). Bearing on the showing of "possession" necessarily incident to an avoidance of the Statute are the following facts: The affidavit of Thurmon recited "that possession of the premises was actually taken and asserted by the plaintiffs by staking their locations upon the premises at the request of Mr. Herbert Wales. During my second conversation with him in the presence of Mr. Engel, on July 29, 1954, he had us show him on a map where our locations would be, and he marked them on the map, and he asked us to stake our locations on the ground. Possession of the premises was thus given by Atlantic Refining Com-

pany to the plaintiffs and was thus taken by the plaintiffs." Thurmon's deposition testimony on the subject is as follows:

"Q. Did you go on the property? A. Yes, sir.

"Q. When? A. When he told me to go and stake the location.

"Q. You went yourself? A. Yes, sir.

"Q. Who went with you? A. Mr. Engel.

"Q. Who else? A. Just the two of us.

"Q. Did you take a surveyor? A. No, we didn't take a surveyor.

"Q. What did you do then? A. We put our stakes.

"Q. What do you mean by that? A. We set our stake there where we showed him on his map where we would drill our well.

"Q. Now you see I don't know all these things and certainly the judge may not know all of them, and the reason I was asking, what did you mean that you set a stake? Just tell us what you do. A. Well, we just put a stake in the ground at that point there.

"Q. Did you dig any ditches? A. No.

"Q. Any pits? A. No, just done as he told us to just stake our location.

"Q. Well, now I asked you what you did. Did you dig any pits or anything like that? A. We dug no pits, we did just exactly what I said, set our stakes, set our location."

Plaintiff Engel testified similarly, viz. :

"Q. Did you go out on the lease? A. Yes, sir.

"Q. And what did you do? A. We stepped off about 50 feet from each well there and staked off about where we thought the well would be.

"Q. And then what did you do? A. That's all.

"Q. Did you actually drive a stake down? A. Yes, sir.

"Q. Did you do anything else there? A. No, that's all.

"Q. Well, actually that's all you ever did on that lease? A. Yes, sir."

As already stated the "farm-out" in question involved the north 160 acres, Section 59 of said Survey, known as the "Netterville Lease Tract"; and it was conclusively established by the deposition of Higle, a well owner, that the tract was actually occupied by defendant and other lease holders along with producing and taking of oil from six or eight wells.

■ The possession required under Hooks v. Bridgewater, supra, is possession that is exclusive and adverse to the owner of the title to the land. "In order for possession to serve as one of the elements necessary to remove the contract from the operation of the Statute of Frauds, the possession must be exclusive and adverse to the donor. There must be a complete surrender of possession by the donor. Hooks v. Bridgewater, supra; Mulkey v. Allen, Tex.Com. App., 36 S.W.2d 198; Thornton v. Central Loan Co., Tex.Civ.App., 164 S.W.2d 248, writ refused." Mueller v. Banks, Tex.Civ. App., 300 S.W.2d 762, 764. Discussing the requirement of a full and complete transfer of possession our Supreme Court in Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286, has stated: " * * * as 'a further strong reason' for the requirement of transfer of possession in cases of alleged parol sales of land, to wit, 'that without it the existence of the contract rests altogether in parol evidence, * * *. *If, however, the purchaser be let into possession, there is furnished by an affirmative act of the owner himself at least a corroborative fact that the*

*contract was actually made.'*" (Emphasis ours.)

The possession above evidenced was at most constructive rather than actual dominion and control. Otherwise stated, in our opinion, the driving of "three stakes" amounted to neither surrender of possession nor valuable improvements; and as held in Hooks v. Bridgewater, supra, "if there has been no surrender of the possession of the land, the contract is not within the rule and is incapable of enforcement."

But if we be mistaken in the conclusion thus reached, then an affirmance of this case must surely rest upon the following grounds: Appellants admit to absence of permanent and valuable improvements; in lieu thereof under Hooks v. Bridgewater, supra, there must be a showing of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. The fraud just referred to involves a state of facts entirely dissimilar to that relied upon by appellants as sufficient to avoid the Statute of Frauds. They say that (1) necessary financial backing for carrying out the contract was obtained; (2) Engel had arranged for drilling of the well; (3) Campbell for supplying all equipment; (4) Thurmon spending over 100 hours and incurring personal expenses "in obtaining evidence necessary to establish the validity of appellee's title; thereby doing everything possible for them to do in *actual performance of the consideration of their oral agreement with appellee.*" (Emphasis ours.)

"The performance of personal services, pursuant to an oral land contract, does not constitute in itself such part performance of the agreement as to make the statute inapplicable. The performance is not sufficient to raise the question of fraud and require specific performance of the agreement. If the service is performed, it could amount to only a consideration for the land, and it is well settled that payment of the purchase money is not sufficient to enforce performance." 20–A Tex.Jur. § 147, p. 428. In Terry v. Craft, Tex.Civ.App., 87 S.W. 844, 845, it was stated that the fact that Mrs. Craft (plaintiff) rendered services for Emerson, the deceased, "is not sufficient to raise the question of fraud and require the enforcement of specific performance, for, if such service was performed, it could amount to only a consideration for the land, and it is well settled that the payment of the purchase money is not sufficient to enforce performance." The facts claimed in the instant case as making the transaction a fraud upon the appellants are wholly lacking in elements necessary to the showing of fraud as required under Hooks v. Bridgewater, supra, or in Duke v. Joseph, Tex.Civ.App., 213 S.W.2d 535, 538, wr. ref., where, in reliance upon an oral contract for assignment of a written lease for more than one year, Duke voluntarily retired from the Army at a heavy reduction of salary. Refusing the relief prayed, Judge McClendon in this case quoted the following excerpts from Santoro v. Mack, 108 Conn. 683, 145 A. 273, that has particular application here:

"Under the rule well established by the authorities it must appear that these acts are of such a character that they can be reasonably and naturally accounted for in no other way than that they were performed in pursuance of a contract between the parties, and, though they cannot indicate all the terms of the agreement, they must be in conformity with its provisions. * * * The acts claimed by the plaintiff as above stated, were not, so far as appears, of this character. They do not compel the inference that there was some contract by which these acts were required of the plaintiff, and therefore explainable upon no other theory. We are not forced to the conclusion by anything which appears of record, that these acts were done in pursuance of the requirements imposed by a contract between the parties. They are of a purely preliminary or

collateral character, done by the plaintiff only in anticipation of the actual performance of a contract by both parties. One of the most common acts of part performance, and one which illustrates the distinction to be drawn, is the act of giving possession of the property to the prospective purchaser."

With further reference to all acts and circumstances set forth in the affidavit of Thurmon at hand, the following excerpt from Duke's appeal, supra [213 S.W.2d 525, 538], is likewise relevant that "We do not find any case in this State which holds that acts of the vendee, not inherently related or corroborative of the existence of the contract, and standing alone have been held sufficient to take the case out of the statute of frauds."

The trial court has correctly held that there exists in this record no genuine issue of any material facts; and the judgment to such effect is accordingly affirmed.