Vernon H. WEATHERFORD, Appellant,

v.

H. L. LEE, Appellee.

No. 14052.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 9, 1963.

Rehearing Denied Feb. 6, 1963.

Werner A. Gohmert, Alice, for appellant.

Lloyd, Lloyd & Dean, Alice, for appellee.

MURRAY, Chief Justice.

This suit was instituted by Vernon H. Weatherford, appellant herein, against H. L. Lee, appellee, in the District Court of Jim Wells County, seeking to establish the joint ownership between the parties of a lease-hold estate and the property thereon situated, for an accounting and adjustment of the equities, and for partition of the property, or, in the alternative, for judgment declaring appellant to be the sole owner of a house situated on such leasehold estate and entitled to possession thereof.

Appellee's motion for an instructed verdict was granted and judgment rendered that Vernon H. Weatherford take nothing by his suit against H. L. Lee, and that he recover his costs herein; from which judgment Vernon H. Weatherford has prosecuted this appeal.

Inasmuch as this is an instructed verdict case, appellant is entitled to have the evidence viewed in a light most favorable to him. We, therefore set forth appellant's "SUMMARY OF STATEMENT OF FACTS":

"Appellant and his family and Appellee and his family have been neighbors for about seven years. Each family has children. They were all very good friends and good neighbors, and visited back and forth. Appellee and his wife had discussed getting a campsite at Mathis. Appellee's wife always wanted one and still wants one. Appellee testified that on other occasions he and his wife had looked for a lot, but didn't find a suitable one.

"In early 1959, Appellant, his wife, and wife of Appellee went to Lake Mathis to look at some lots. They were interested in having a house at the lake and a place to go on weekends. They were looking for a campsite to use together. Appellant and Appellee's wife agreed she would 'furnish' the lot and Appellant was going to furnish electrical materials, build tables, put up lights, build rest rooms. And if he would help her fix up the place, he would use it right along with her. After looking at various available lots, Appellee's wife found one she liked and leased it. The lease was for one year with an option to renew it for a period of ten years. She had the lot put in her name, and paid for it with community funds out of a joint bank account she and her husband had.

"After returning home, Appellant, his wife, and Appellee's wife saw Appellee and told him about their agreement and acquiring the lot. The parties and their wives agreed to be partners in the place at the lake. Appellee's wife told Appellee that Appellant was going to do the work up there to pay for his part of the lease.

"The two families were going to use this lot together, equally. Appellee's wife told Appellee of all the discussion (about the lease) and he voiced no objection; and later participated in the program. This agreement

was made after the lease had been obtained. Appellee's wife admitted the agreement was that Appellant could have a 'living interest' and he could stay up there. Appellee acknowledged that the agreement was that Appellant was to furnish the labor and Appellee was to furnish the materials, that Appellant furnished materials and labor, and that Appellant was to use the place. Appellant's wife, while testifying about her giving Appellee fifty dollars on the house, said, 'And I didn't ask him for a receipt right then because naturally you are just not going to ask your neighbors or your close friends for a receipt for anything. Neither did I give him a receipt for the lease, because well, I thought my word was good enough, and he didn't ask me for any.'

"Both families acquired house trailers and moved them on the lot at the lake, and used them from March to December. Appellee's wife bought a house trailer and Appellant helped fix it up and helped situate it on the lake lot. Appellant and his family did not stay in that trailer—it would not accommodate two families. Appellee knew a fellow in Corpus who had a trailer for sale for $150.00, so Appellant gave Appellee a check for it, and Appellee's son helped Appellant move it to the lake lot and set it up. Appellant and two men hired by Appellee spent two days clearing the lot. Appellant built outdoor toilets, furnished some of the materials and moved it on the lot. Appellant and Appellee built tables on the lot. Appellant installed electrical conduits, poles and outlets to the house trailers. Appellant bought a boat, and Appellant and Appellee each paid one-half of the cost of a boat slip. The boat was used jointly. The subject of buying a house came up and Appellant had discovered a house for sale by Magnolia Pipe Line Company. All of them went to look at it. Appellant later bid' on the house and bought it for fifty dollars. Witness Furlow stated the policy of Magnolia Pipe Line Company was to sell surplus property to employees at a reduced rate. Witness Bennett, a real estate salesman, made an examination of the house and valued it in excess of $1,000.00, apart from the land. Appellee paid for moving the house to the lake lot and Appellee's wife gave Appellant fifty dollars for materials to build cabinets and told him to sign Appellee's name on tickets for other materials. Both Appellant and Appellee furnished labor and materials to set the house up on the lot, wire it for electricity, build a cesspool, lay drain lines, install plumbing, paint the house, build a garage, build a fence and get, set out trees, grass, and other things. Appellee paid the rent for the first and second year. Appellant offered to pay his share of the second year's rent, but Appellee declined, saying Appellant had done too much work. Appellant bought and paid for materials which were used in the completion of the premises and house at the lake. Appellant paid his rent and half of the utility bills for the third year. At the time they were moving their furniture in the house, they flipped a coin to determine which family would occupy which bedroom. In June, 1961, one year and six months after the house was bought, Appellee asked that the bill of sale on the house be transferred to their names and Appellant had a bill of sale for one-half interest made out and offered it to them; and they refused it. Appellee thereafter excluded Appellant from the premises, changed the locks on the gates, and moved Appellant's personal property from the house."

■ An all-important fact is that the lease was taken in the name of appellee's wife and the first year's rent paid in full by her, before any agreement or joint

venture was entered into between appellant and appellee. The lease was for more than one year and is governed by the rule to the effect that a conveyance of an interest in land which is to continue for more than one year, to be enforceable, must be in writing. The lease was for one year, with an option in favor of appellee to renew it for ten years, and was within the statute of frauds. Art. 1288 and Art. 3995, Vernon's Tex.Civ.Stats.; Hill v. Hunter, Tex. Civ.App., 157 S.W. 247; Bacon v. Nelson, Tex.Civ.App., 81 S.W.2d 287.

 A joint venture is governed by the same rules as a partnership. The leasehold estate, being in the name of appellee or his wife at the time the joint venture was entered into, did not become a partnership asset because there was no written conveyance making it such. Pappas v. Gounaris, 158 Tex. 355, 311 S.W.2d 644; 49 Am.Jur. 543; 45 A.L.R.2d 1009–1026.

Admittedly, appellant did not have a written conveyance to him of any part of the leasehold. The rule is well stated in Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, as to when an oral conveyance of an interest in real estate to continue for more than one year, is valid and enforceable. The requirements are: (1) payment of the consideration, whether it be in money or services; (2) possession by vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor. Each of these three elements is indispensable and they must all exist at the same time. The possession required by the above rule of law is possession that is exclusive and adverse to the owner of the title to the land. This appellant did not have. Thornton v. Central Loan Co., Tex.Civ.App., 164 S.W. 2d 248.

Appellant contends that the lease provided that any improvements made upon the lot are to be removed at the termination of the lease and, therefore, the improvements remained personal property and did not become a part of the real estate. Appellant was not a party to the lease and he could not claim any benefits under its provisions. The right to remove improvements was personal to appellee.

The judgment is affirmed.