**Joe R. LONG and Teresa Long**

v.

**UNITED STATES of America.**

**Civ. A. No. A–74–CA–156.**

United States District Court,
W. D. Texas,
Austin Division.

May 28, 1976.

Joseph P. Webber, Austin, Tex., Durant, Mankoff, Davis & Wolens, Dallas, Tex., for plaintiffs.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Wm. W. Guild, Atty. in Charge, Tax Div., Peter J. Grabicki, Atty., Tax Div., Dallas, Tex., for defendant.

## MEMORANDUM OPINION and ORDER

ROBERTS, District Judge.

This cause was heard by the Court, sitting without a jury, in Austin, Texas, on April 12, 1976, and after carefully considering the evidence the Court enters this Memorandum Opinion and Order, which shall constitute findings of fact and conclusions of law. This is an action for the refund of $15,161.40 of income tax and interest paid by plaintiffs, Joe R. Long and Teresa

Long,[1] for calendar year 1970. The question presented for determination is whether plaintiff had a sufficient adjusted basis in a joint venture to allow him to take one-half of the alleged losses of the joint venture as a deduction on his income tax return for calendar year 1970.

Plaintiff and Mr. Jake Jacobsen were engaged in the practice of law together in Austin, Texas, from 1967 until 1972. Mr. Jacobsen had been engaged in business dealings with Mr. Ray Cowan during the period from 1967 through 1970. During 1969 savings and loan associations provided interim financing for Mr. Jacobsen and Mr. Cowan for the construction of two apartment complexes in the vicinity of Fort Worth, Texas. These apartment complexes were known as the "Gaslight Dwellings Apartments" and the "Western Hills Dwellings Apartments." The general contractors who were constructing these two apartment complexes went bankrupt in late 1969, and were unable to complete construction. Mr. Jacobsen and Mr. Cowan took over the apartment complexes and completed construction in 1970. Mr. Jacobsen and Mr. Cowan subsequently decided to split up their joint business dealings. Jacobsen received Cowan's interest in the two apartment complexes pursuant to an earlier agreement which was carried out in writing in September 1970, when Cowan deeded his interest in the two apartment complexes to Jacobsen.

On July 15, 1970, Plaintiff and Mr. Jacobsen entered into a written joint venture agreement [2] relative to carrying on the operation of the two apartment complexes. On the date the joint venture agreement was entered, Mr. Cowan had not yet deeded his interest in the apartment complexes to Mr. Jacobsen. On July 22, 1970, Mr. Jacobsen and Mr. Cowan finalized the permanent financing of the two apartment complexes by executing certain notes and deeds of trust. Permanent financing in the Gaslight Dwellings Apartments was evidenced by a note in the amount of $2,175,000, executed by Mr. Cowan and Mr. Jacobsen to National Bankers Life Insurance Company. The

1. Teresa Long is a party to this action only because she and her husband, Joe R. Long, filed a joint income tax return for calendar year 1970. Joe R. Long will be referred to hereinafter as "Plaintiff."

2. The following is the complete text of the agreement.

WHEREAS, Jake Jacobsen of Austin, Texas has acquired title to Tracts B and C, Block 69, Western Hills Addition, an addition to the city of Fort Worth, Tarrant County, Texas; and

WHEREAS, constructed on said tracts are the Gaslight Dwellings Apartment Complex consisting of 145 apartment rental units, and the Western Hills Dwellings Apartment Complex consisting of 118 apartment rental units; and

WHEREAS, Joe R. Long of Austin, Texas has heretofore had extensive experience in the ownership, operation and management of apartment rental units; and

WHEREAS, Jake Jacobsen desires aid and assistance in the operation of such rental units; and

WHEREAS, Jake Jacobsen and Joe R. Long desire to hereafter operate the above described apartment rental units as a joint venture;

NOW, THEREFORE, know all men by these presents that:

1. Jake Jacobsen and Joe R. Long jointly agree to operate Western Hills Apartments and Gaslight Dwellings hereafter as a joint venture, and that each named party hereafter shall share equally in any and all profits or losses as a result of the operation of said rental units.

2. Jake Jacobsen shall hereafter continue to hold legal title to said apartment units in his name and shall contribute the use of the apartment rental units to the joint venture. Joe R. Long shall hereafter be responsible for the management and operation of such units and shall contribute whatever time and skill to this joint venture as shall be necessary for the efficient accomplishment of this purpose.

3. Profit or loss from the operation of such units shall be computed by taking the sum of the total of all gross receipts, to include all rentals, deposit forfeitures, and income from the vending machines operated in such units and subtracting therefrom all expenses of operation, to include management expenses, interest, taxes, insurance, repairs and maintenance, utilities, depreciation, and all other expenses normally necessary and attendant to the operation of apartment rental units.

4. Joe R. Long expressly does not assume any liability on any notes evidencing indebtedness secured by all or any part of the real property described above or secured by all or any part of any personal property located on such premises.

WITNESS our hands this 15th day of July, 1970.

note was secured by a deed of trust on the Gaslight Dwellings Apartments. The permanent financing for the Western Hills Dwellings Apartments was evidenced by a note for $1,650,000, signed by Mr. Cowan and Mr. Jacobsen to National Bankers Life Insurance Company. This note was secured by a deed of trust on the Western Hills Dwellings Apartments. Both notes were dated July 22, 1970. Neither the notes nor the deeds of trust recite any interest in either of the apartment complexes on the part of Joe R. Long.

In November 1970, after Mr. Cowan had deeded his interest in the two apartment complexes to Mr. Jacobsen, Mr. Jacobsen found it necessary to borrow additional money in connection with the apartment complexes. Mr. Jacobsen executed a note in the amount of $80,000 to City Bank & Trust Company of Dallas, Texas on November 24, 1970. This note was unsecured, and made no reference to the apartment complexes, Joe Long, or a joint venture. On November 24, 1970, Mr. Jacobsen also executed a note in the amount of $150,000 to City Bank & Trust Company of Dallas, Texas. This note was secured by a deed of trust covering both apartment complexes, and the note specified that all funds advanced on the note were to be used for the acquisition and payment of improvements made upon the apartment complexes. Neither the note nor the deed of trust made any reference to Joe R. Long or a joint venture. The $150,000 note was also secured by a security agreement with respect to all furniture and equipment "owned by debtor," not attached to realty, and located at the apartment complexes. Mr. Jacobsen was denominated as the "debtor." During the latter half of 1970, the two apartment complexes were operated under the principal supervision of Joe R. Long, pursuant to the joint venture agreement between Mr. Long and Mr. Jacobsen. During this period of time, the cash flow from the apartment complexes was adequate to pay the operating expenses of the apartment complexes.

On their 1970 joint income tax return, Plaintiffs attempted to deduct $33,197.84 as their claimed 50 percent share of the alleged net loss arising from the operation of the two apartment complexes. Absent the depreciation deduction, however, the joint venture actually shows a positive cash flow of approximately $64,000 for the year 1970. Both plaintiff and the joint venture kept their books on the cash basis method for tax purposes. Upon audit by the Internal Revenue Service, the claimed deduction of $33,197.84 was disallowed, because the Commissioner of Internal Revenue determined that plaintiff had no basis in the joint venture against which the claimed loss could be taken, pursuant to 26 U.S.C. § 704(d).

The Court finds that Plaintiff did not contribute any money or property to the joint venture at any time. Further, plaintiff did not become personally liable for any of the indebtedness which encumbered the apartment complexes or for which Mr. Jacobsen had executed notes. In July of 1971, default occurred on the notes evidencing the permanent financing on both complexes, and in October of 1971, the deeds of trust underlying the permanent financing were foreclosed. At no time did any creditor of the apartment complexes pursue Joe R. Long on any liability arising from the operation of the apartment complexes, the notes executed jointly by Mr. Jacobsen and Mr. Cowan, or the notes executed individually by Mr. Jacobsen.

The joint venture agreement between Joe R. Long and Jake Jacobsen, set out above, is an agreement respecting only the operation of the apartment complexes by plaintiff and Jacobsen. Plaintiff was to contribute management services and Jacobsen was to contribute only the use of the apartment complexes, retaining legal title. The agreement specifically stated that plaintiff assumed no liability for any of the notes executed in connection with the apartment complexes. The agreement sets out the method by which profit and loss from operation of the apartments would be calculated in carrying on the joint venture, as between the two joint venturers. The joint venturers were to share equally in all profits and losses resulting from the operation of the joint venture. Nowhere does the agree-

ment purport to confer any ownership or equity interest in the apartment complexes on either plaintiff or the joint venture.

As a result of the disallowance of Plaintiffs' claimed deduction of $33,197.84 by the Internal Revenue Service, they were assessed additional taxes, which they paid. Within two years of such payment, plaintiffs filed a claim for refund with the Internal Revenue Service. The Internal Revenue Service disallowed the claim for refund, and plaintiffs instituted this suit for refund within two years thereafter. This Court has jurisdiction over the controversy and the parties thereto under 28 U.S.C. § 1346(a)(1). Pursuant to 26 U.S.C. §§ 761(a) and 761(b), the term "partnership" includes a joint venture and the term "partner" includes a member of the joint venture. Thus, the "joint venture" here is governed by the partnership provisions of 26 U.S.C. §§ 701–771, as is the deductibility of Plaintiffs' claimed share of alleged losses.

The central issue in the instant case is whether Plaintiff had a basis in the joint venture for tax purposes against which to deduct his claimed loss. The determination of basis is the crux of this case, because losses taken by a member of a joint venture are limited to the amount of such venturer's basis in the partnership at the end of the year in which such losses occurred. The relevant statute provides as follows:

*Limitation on Allowance of Losses.*—A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership. 26 U.S.C. § 704(d).

Generally a venturer's adjusted basis is the sum of his contributions of money and property (limited to his individual basis therein) to the venture, plus his share of the income of the joint venture, reduced (but never below zero) by distributions to him of money and property, and his distributive share of the joint venture's losses. *See* 26 U.S.C. § 705. It is readily apparent that plaintiff had no basis in the venture in question under Section 705. Plaintiff did not contribute any funds to this venture, nor did he contribute any property. Plaintiff merely agreed to provide managerial services to the joint venture in return for one-half of the operating profits and losses.

Plaintiff claims basis by relying upon 26 U.S.C § 752(c), which states in pertinent part:

. . . a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property.

Section 752(c) produces additional basis for other joint venturers when one member of a joint venture contributes property to the venture that is subject to indebtedness. 26 C.F.R. § 1.752–1(c). The theory underlying this section is that property owned by the joint venture subject to an encumbrance renders that encumbrance, in effect, a liability of all members of the venture, because it is an economic obligation which the venturers will service and retire in order to protect and enhance their present investment or equity. *See Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). Plaintiff asserts that the joint venture was the owner of the apartment complexes, that is, that Jake Jacobsen contributed equitable ownership of the apartment complexes to the joint venture when the venture was formed, and not just the use of the apartment complexes. If the joint venture was the owner of the apartment complexes, Section 752(c) applies, and plaintiff can derive basis from the indebtedness to which the property was subject. However, absent ownership of the apartment complexes by the joint venture, Section 752(c), by its terms, does not apply, and plaintiff has no basis. *See* 6 Mertens, *Law of Federal Income Taxation* (Rev.), § 35.45; 26 C.F.R. § 1.752–1(a)(2) and (c).

Plaintiff has not carried his burden of proving that the joint venture was the owner of the apartment complexes. The joint venture agreement does not convey ownership of the apartment complexes from Jake Jacobsen to the joint venture. The agreement specifically recites that it is an agreement with respect only to the operation of the apartment complexes. Further, it specifically states that Jacobsen contributes only the use of the apartment complexes to the joint venture, retaining legal title in himself. This conclusion is borne out by the provisions of the agreement which contemplated that the venture would pay interest on the mortgage debt, but did not require that the venture make any of the principal payments. By the terms of the agreement, plaintiff was expressly absolved of any liability for the mortgage debt with respect to the apartment complexes.

■■ Plaintiff sought to establish equitable ownership of the apartment complexes in the joint venture through his own testimony at trial. Plaintiff offered his testimony that Jake Jacobsen intended to contribute equitable ownership of the apartment complexes to the joint venture upon its formation. This parol testimony, however, contradicts the written terms of the joint venture agreement. The agreement specifies Jacobsen's contribution to the joint venture as the use of the apartment complexes. Contribution of ownership of an asset to a venture is in direct contradiction to a contribution of mere use. Plaintiff's parol evidence, therefore, was offered to vary the legal effect and clear and unambiguous meaning of the written joint venture agreement. Such parol evidence, in this tax refund suit, is inadmissible against Defendant. See *Deshotels v. United States*, 450 F.2d 961 (5th Cir. 1971); *Pugh v. Commissioner of Internal Revenue*, 49 F.2d 76 (5th Cir. 1931). Furthermore, even if such evidence were admissible, under Texas law, real property cannot be contributed as an asset to a partnership by oral agreement. *Cf. Pappas v. Gounaris*, 158 Tex. 355, 311 S.W.2d 644 (1958); *Weatherford v. Lee*, 364 S.W.2d 730 (Tex.Civ.App.—San Antonio, 1963, writ ref'd, n. r. e.).

■ Plaintiff also contends that he had an adjusted basis in the joint venture to the extent of the venture's accrued interest expense as of December 31, 1970. Plaintiff relies on Rev.Rul. 60–345, 1960–2 Cum. Bull. 211, and 26 C.F.R. § 1.752–1(a)(1). Interest had accrued on the two notes evidencing the permanent financing for the apartment complexes. It is plaintiff's contention that this accrued interest was a liability of the joint venture, that plaintiff's share of this joint venture liability was 50 percent, and to that extent, plaintiff acquired basis. 26 U.S.C. § 752(a) provides:

> Any increase in a partner's share of the liabilities of a partnership . . . shall be considered as a contribution of money by such partner to the partnership.

The rationale of Section 752(a) is to increase the basis of a joint venturer's interest because the joint venturer has personal financial exposure to the debts of the joint venture to the extent of his share of liability. This personal exposure arises from the nature of a partnership or joint venture, since each partner or venturer is personally liable for the debts of the entity. This exposure is analogous to a contribution of money by the venturer, just as if he had personally borrowed funds and turned them over to the venture. 6 Mertens, *Law of Federal Income Taxation* (Rev.), § 35.45. Treasury Regulations on Income Tax, § 1.752–1(a)(1), state:

> . . . where the liabilities of a partnership are increased, and each partner's share of such liabilities is thereby increased, the amount of each partner's increase shall be treated as a contribution of money by that partner to the partnership.

Thus, Section 752(a) is applicable when the joint venture as an entity incurs liabilities for which each member thereof has exposure. In the instant case, however, Plaintiff never became personally exposed to any of the liabilities which arose incident to the operation of the apartment complexes, including interest liabilities which accrued.

Plaintiff was not a signatory to any of the notes on which the interest accrued, and the joint venture was not a signatory on such notes. Neither Plaintiff nor the joint venture assumed the notes. In fact, Plaintiff was never personally pursued by any creditors of the joint venture and he never paid any amount on any joint venture liabilities, including accrued interest liabilities, either before or after the joint venture failed in 1971. The rationale for adding a venturer's share of liabilities, including accrued expenses, to his basis is that the venturer has, in effect, extended his credit to the same effect as if he personally borrowed funds and contributed them to the venture. *See* 26 C.F.R. § 1.752–1(a)(1). Since the accrued interest on the notes was not a liability of the joint venture, but rather a personal liability of Mr. Jacobsen to the noteholders, Plaintiff never suffered any personal exposure to the liability. Plaintiff cannot claim a share of those liabilities as his own, and the liabilities cannot therefore be treated under the statute and the Regulations as analogous to a contribution of money by him to the joint venture. Thus, Plaintiff's claimed basis in this regard must fail. *See* 6 Mertens, *Law of Federal Income Taxation* (Rev.), § 35.45.

Plaintiff also argues that the accrued interest expense created basis under Section 752(c) as a liability to which the apartment complexes were subject. Plaintiff advances the same legal theory upon which he relied to claim basis by virtue of the permanent financing of the apartment complexes. However, as set forth above, Plaintiff cannot acquire basis under Section 752(c) unless the joint venture was in fact the owner of the apartment complexes. As pointed out previously, Plaintiff has not carried his burden of proving that the joint venture was the owner of the apartment complexes, rather than Mr. Jacobsen. Plaintiff relies upon *Crane v. Commissioner, supra*; *Blackstone Theatre Co. v. Commissioner*, 12 T.C. 801 (1949); *Mayerson v. Commissioner*, 47 T.C. 340 (1966); and *Bolger v. Commissioner*, 59 T.C. 760 (1973), to advance his theory under Section 752(c). In each of these cases, the courts held that the amount of indebtedness to which property was subject should be included in the basis of the owner of the property. However, each of these cases is distinguishable from the instant case, inasmuch as in each of those cases the taxpayer claiming basis was the owner of the property. In the instant case, however, the joint venture has not been proved to have been the owner of the property, and thus Section 752(c) is inapplicable, as is the rationale of the cases cited by Plaintiff.

On the basis of the above conclusions, Plaintiff did not have an adjusted basis in the joint venture in 1970 against which to deduct one-half of the alleged losses of the joint venture on his personal income tax return for 1970. Plaintiffs' claimed deduction of $33,197.84 for 1970 was properly disallowed by the Commissioner of Internal Revenue. It is accordingly

ORDERED, ADJUDGED and DECREED that Plaintiff take nothing and that the Clerk shall enter judgment for Defendant on the merits in accordance with this Memorandum Opinion and Order.