**Tom W. STOTTS, Appellant,**

v.

**Deral WAKEFIELD et al., Appellees.**

**No. 7754.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 4, 1967.

Rehearing Denied Jan. 8, 1968.

Miller, Sanders, Baker & Miller, and W. A. Baker, Amarillo, for appellant.

Robinson & Fotheringham and A. J. Robinson, Amarillo, for appellees.

CHAPMAN, Justice.

This is an appeal from a judgment summarily rendered by the trial court. In addition to the pleadings of the parties there is in the summary judgment record a motion for summary judgment, accompanied by an affidavit filed by defendants-appellees; an answer to the motion, accompanied by an affidavit; request for admissions and admissions thereto filed by plaintiff-appellant; and the statement of facts made on the venue hearing. Though the judgment rendered does not recite that the venue statement of facts was considered, it is before us as one of the summary judgment components and we believe must be considered. It does not represent oral testimony received at the hearing, such as is precluded by Rule 166-A(c) Vernon's Annotated Texas Rules, and is referred to in appellant's brief without any exceptions thereto by appellees. As utilized by the parties we believe it must have been used to serve the place of depositions. Likewise, the judgment does not recite that the answers to the requests for admissions were considered. In any event neither of said components are essential to appellant's contention that a material fact issue was raised in the record.

Appellant, Tom W. Stotts, sued appellees, Deral Wakefield and wife, Dorothy Wakefield and Donnie Q. Palmer and wife, Raydell Palmer, seeking damages resulting from major defects which appeared in a new residential building purchased from the defendants-appellees. Recovery was sought upon three theories, i. e. implied warranty, fraud and negligence. We shall be concerned here with only the record as it applies to alleged fraudulent representations.

Appellant alleged in effect that at the time of the execution of the sales contract leading to the purchase of the subject house that he informed the Palmers of his requirement that the slab foundation be of a thickness of four inches but that in September, 1964, he discovered such slab was only three inches in thickness. The suit was filed by appellant on May 4, 1966.

Appellant then alleged the false representation of a four inch slab induced the purchase, reliance thereon, damages, etc.; i. e. the elements constituting fraud, and that at all times the Palmers were acting in behalf of the Wakefields in making such representations. Among the defenses relied on by appellees is the 2-yr. statute of limitations; i. e. if any fraudulent representations were made concerning a four inch slab foundation in the inducement of the contract that more than 2 years elapsed from the time of the discovery of the lack of a four inch slab foundation (or the time within which a reasonable person should have discovered it) to the time of the filing of the suit. The summary judgment evidence is not completely uncontroversial with respect to the time of the discovery of major defects, or the time when they should have been discovered, (as distinguished from minor defects common to residences in the area) alleged to have been caused by a three inch slab foundation.

We must, therefore, follow certain rules laid down by the Supreme Court of Texas in deciding if there was no genuine issue as to any material fact and that appellees were entitled to a judgment as a matter of law. These rules as applicable to the instant case have been specifically spelled out by the Supreme Court of Texas in Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co. (Tex.Sup.), 391 S.W.2d 41, 47 (1965) as follows:

"The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. Tigner v. First Nat'l Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85 (1954); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19 (Tex.Sup.1963); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954). *If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true.* Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286 (1957); Smith v. Bolin, supra; Gulbenkian v. Penn, supra. Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1943)." (Emphasis added)

Honoring the rules just stated, we find that appellant, knowing the building code in the city specified four inches for a slab foundation, told the Palmers he wanted that thickness and they told him " * * * they were very glad that they had a four-inch foundation." The record also shows:

"Q. * * * That date (about September 21, 1964) refers to about the time you discovered the defects in that house, is that right?

A. Yes, sir.

*   *   *   *   *   *

Q. Did you ever talk to him (Mr. Palmer) about the structural nature of the house itself?

A. Only to the extent that Mr. Palmer did mention that they were very glad that they had a four inch foundation.

Q. Did you yourself ever specify what thickness you wanted in the concrete foundation?

A. I knew that the code specified four inches, and I was glad it had a four inch foundation.

Q. Did you yourself say you wanted a four inch slab?

A. Well, I am sure I must have, yes, sir.

*   *   *   *   *   *

Q. Did you know of any way at the time you negotiated with him concerning the sale of this house to check the thickness of the slab?

A. No.

Q. Did you rely on the allegations that there was a four inch concrete slab underneath the house?

A. Yes, sir.

Q. Was that an inducement for you to enter into the sales contract?

A. Yes, definitely." (Parenthetical statements ours)

Mrs. Stotts corroborated the testimony of her husband to the effect that Mr. Palmer told her husband before the sales contract

was signed that the house had a four inch slab foundation.

Still honoring the rules by which we are bound in considering appeals from judgments summarily rendered, we find that the walls separated from the ceiling in some places; from the concrete slab in some places; that the concrete slab settled so much that water came up from underneath into the living room; that everywhere there is a door, one-half of the wall goes down with the concrete and one-half adheres to the ceiling, so the eleven or twelve doors have an angular position and will not close; and these defects were at least partly due to the concrete slab being only three inches in thickness. Additionally, appellant's affidavit in answer to appellees' motion for summary judgment swears that the type defects observed after first moving into the house were minor and not unusual in that area; that it was during September, 1964, that he first noticed substantial sinking of the slab foundation resulting in major defects; that the fireplace cannot be used because the smoke bellows out into the room where the fireplace has separated from the ceiling; that cold air enters the room along with insects "and other rodents"; that during the preliminary negotiations he was told by defendants that the house was constructed in a good and workmanlike manner; and that as a result of such negotiations he was induced to sign the sales contract. The house was a new one and was constructed by Wakefield.

There, of course, is some summary judgment evidence indicating the concrete slab is not just three inches in thickness and that the suit was filed more than two years after the defects were discovered. However, in passing upon a judgment summarily rendered, we must view the evidence in the light most favorable to the party opposing the motion, disregarding all conflicts in the evidence and accepting as true all evidence which tends to support the position of the party opposing the motion. Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co., supra and the cases therein cited on the point.

Appellees contend the discovery of the minor defects more than two years prior to the filing of the suit put appellant on notice and that the limitation period began to run at that time. They say the fact that he testified he was an engineer gives weight to this contention. We do not agree the record so shows. He testified he had taken a correspondence course in structural engineering and general engineering but he admitted he had never received a diploma or a degree of any sort. Additionally, in considering appeals from judgments summarily rendered, all conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286 (1957); Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co., supra.

Appellees, by brief, contend that it is only where "an entire agreement clause" is not included in the written contract of sale that false representations may be shown to avoid the contract of sale for fraud, citing Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97. That case, along with all other appellate decisions on this particular point holding that parol evidence is inadmissible to vary the terms of a written contract containing a merger clause have been overruled. The Supreme Court of Texas in Dallas Farm Machinery Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233, in a very forthright discussion cited and discussed many cases by the appellate courts of Texas at every level on the admissibility of parol evidence to prove that a written contract containing a merger clause (referred to by appellant as "an entire agreement clause") was induced by fraud. The quote stated:

"A review of the Texas cases on the question reveals conflicting decisions and

indicates a resulting confusion which can hardly be resolved or explained away with nice distinctions."

The line of cases such as Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W. 2d 47 and culminating in the Elkins case which followed it were specifically overruled and the pronouncements contrary thereto and in conflict therewith represented by Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873; Texas and P. Ry. Co. v. Presley, 137 Tex. 232, 152 S.W.2d 1105; and Texas & N. O. Ry. Co. v. Thompson, Tex.Com.App., 12 S.W.2d 963 were adopted and reaffirmed. In doing so, the Court followed a precedent set by the Supreme Judicial Court of Mass. in Bates v. Southgate, 308 Mass. 170, 31 N.E. 2d 551, 133 A.L.R. 1349. The Supreme Court of Texas noted that prior decisions of the Massachusetts court had been in the same state of conflict and confusion on this identical point as the Texas decisions, and then quoted with approval the following holding by the Massachusetts Court of last resort:

"As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement."

It should also be noted that the instant case does not involve an alleged fraudulent statement by an agent where there is an innocent principle involved, but it was the principle making the alleged fraudulent representations of a four inch slab foundation under appellant's theory of recovery for fraud in the inducement of the contract.

■ Of course, defendants deny in their answer to the request for admissions that the slab foundation is of the thickness of only three inches. This is one of the contested facts that precludes the rendition of a summary judgment. It is a material fact inquiry because there is some probative evidence that the failure to have a four inch foundation slab resulted in the major defects for which damages are sought. Accordingly, the judgment of the trial court is reversed and remanded for a trial on its merits.